IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| J.D.P., by and through his next friend, LASHUN OLIVER, guardian, <br><br> Plaintiff, <br><br> v. <br><br> MONTGOMERY COUNTY BOARD OF EDUCATION, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CASE NO. 2:20-CV-420-WKW <br> ) [WO] <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER

On May 14, 2020, J.D.P., by and through his next friend, Lashun Oliver ("Plaintiff"), filed a complaint in the Circuit Court of Montgomery County, Alabama against the following Defendants: the Montgomery County Board of Education ("the Board"); the Superintendent of the Montgomery County School District, Ann Roy Moore ("Moore"), in both her individual and official capacities; members of the Montgomery County Board of Education, Lesa Keith, W. Durden Dean, Eleanor Lewis Dawkins, Mary Briers, Melissa B. Snowden, Robert Porterfield, and Arica Watkins-Smith ("Board Members"), all in their individual capacities; Monique Thomas Caswell ("Caswell"), a teacher at Jefferson Davis High School, in her individual capacity; David Hodge ("Hodge"), also a teacher at Jefferson Davis High

School, in his individual capacity; and certain fictitious Defendants. (Doc. # 1-1.)[1] In his complaint, Plaintiff alleges state-law claims for outrage and negligent supervision in addition to violations of the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment as enforced by 42 U.S.C. § 1983. On June 17, 2020, the Board and the Board Members removed the case to federal court based upon federal question jurisdiction. 28 U.S.C. §§ 1331(a), 1441, 1446(b).

Before the court are three separate motions: (1) Motion to Dismiss, filed by Moore (Doc. # 11); (2) Motion to Dismiss or, in the alternative, Motion for a More Definite Statement, filed by the Board and the Board Members (Doc. # 12); and (3) Motion to Dismiss, filed by Hodge (Doc. # 31). For the reasons given below, the Board and the Board Members' motion is due to be granted, Moore's motion is due to be granted in part and denied in part without prejudice, and Hodge's motion is due to be granted.

---

[1] In the body of the complaint, Plaintiff names Bobby E. Abrams, Jr., principal at Jefferson Davis High School, as a defendant in this case. (Doc. # 1-1, at 4.) Plaintiff also references Mr. Abrams in the headings to Counts 2 and 5 of the complaint. (Doc. # 1-1, at 10, 12.) However, Mr. Abrams is not listed in the caption of the complaint nor does the record establish that he has been served. Pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Ninety days have passed since the filing of the complaint on May 14, 2020. Accordingly, Plaintiff will be required to show cause why his action against Mr. Abrams should not be dismissed without prejudice pursuant to Rule 4(m).

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over the federal-law claims pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights jurisdiction), 1441 and 1446(b)(3) (removal jurisdiction), and supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. Personal jurisdiction and venue are not contested.

## II. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The well- pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id*. (citation omitted).

### III.  BACKGROUND

This case is about teachers behaving badly.  The complaint contains the following factual allegations.  On May 23, 2018, Plaintiff, a seventeen-year-old male student at Jefferson Davis High School, attended class.  Caswell and Hodge, both teachers at the school, were present in the classroom.  However, only Hodge was in the room for the purpose of teaching Plaintiff; Caswell's reasons for being in the room remain unclear.  At some point during the lesson, Caswell began to bully, intimidate, and harass Plaintiff, including the use of a racial slur presumably directed at Plaintiff.  Specifically, Caswell said, "Get that lesson.  You the only one.  Get that lesson.  That's what happens when [n-word] be thinking you be playing.  See this teacher's good.  Y'all know me, I'm petty.  Hell no, he would be getting' [sic] this at summer school.  Twenty days, four weeks."  (Doc. # 1-1, at 6 (alteration in original).)  Caswell continued, "Aw, don't be ashamed now.  Because you weren't ashamed during the school year.  We need to put this on your Snap[chat] so all your friends can see."  (Doc. # 1-1, at 6 (alteration in original).)  While Caswell criticized Plaintiff, Hodge laughed and made no attempt to intervene.

To make matters worse, Caswell posted this entire exchange to her social media account.  In addition to the allegations in the complaint, Plaintiff has also submitted a video recording depicting the events described above.  (Doc. # 39.)[2]  The

---

² While Plaintiff did not attach the video recording to his complaint, it is both central to

4

complaint's allegations describing the May 23, 2018 episode generally are consistent with what is shown in the one minute and nineteen second video.

Following the in-class incident, Plaintiff reported what happened to the Board and its members. According to Plaintiff, these Defendants failed to provide him with any relief or counseling. Plaintiff also alleges that "Caswell's prior history of aggression and inappropriate behavior toward students was known," yet no action was taken to remedy her conduct or remove her from her teaching position. (Doc. # 1-1, at 7.)[3]

Based on these allegations, Plaintiff brings five causes of action: (1) violation of his due process rights under the Fourteenth Amendment against the Board; (2) violation of his equal protection rights under the Fourteenth Amendment against the Board, the Board Members (all in their individual capacities), and Moore; (3) a state-law claim for outrage against Caswell; (4) another state-law claim for outrage against Hodge; and (5) a state-law claim for negligent supervision against the Board, the Board Members, Moore, and fictitious Defendants A, B, and C.

---

his claims and referenced in the complaint. Thus, the video recording may be considered without converting the motions to dismiss into motions for summary judgment. *See Starship Enters. of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013).

[3] Notably, the complaint does not identify Caswell's prior misconduct toward students, much less the individuals or entities that were allegedly aware of such transgressions.

## IV.  DISCUSSION

### A. **Plaintiff Fails to State a Claim for a Substantive Due Process Violation Under the Fourteenth Amendment.**

Count 1 against the Board fails as a matter of law because his allegations, while troubling, do not satisfy the high standard necessary to plausibly establish a § 1983 substantive due process violation[4]—"arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009).

To succeed on his § 1983 claim, Plaintiff must establish (1) that the Board deprived him of a right secured by the United States Constitution and (2) that the Board acted under color of state law. *See Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998). Where, as here, a plaintiff sues a municipality like the Board, he "must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

---

[4] Plaintiff's complaint fails to specify whether Count 1 alleges a violation of his procedural due process rights or substantive due process rights under the Fourteenth Amendment. *See McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (noting that the Fourteenth Amendment Due Process Clause "provides two different kinds of constitutional protection: procedural due process and substantive due process"). Plaintiff's briefing in opposition to the Board's motion to dismiss is also silent on the issue. (Doc. # 18.) Despite the lack of clarity, Count 1 is construed as alleging a violation of Plaintiff's substantive due process rights. Specifically, Plaintiff alleges that the Board allowed "severe and pervasive invasions into [his] personal security" and that the intrusions "strip[ped] the very essence and integrity of his childhood and personhood." (Doc. # 1-1, at 9.) Such allegations sound in substantive due process. *See generally Albright v. Oliver*, 510 U.S. 266, 272 (1994).

Under the Due Process Clause of the Fourteenth Amendment, no state can deprive "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As mentioned above, "[c]onduct by a government actor will rise to the level of a substantive due process violation *only if* the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis*, 555 F.3d at 982 (citation omitted) (emphasis added). This standard has a high threshold, and even allegations of "deliberate indifference" do not satisfy its demands:

> The concept of conscience-shocking conduct duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability. The Supreme Court has made clear the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. Thus, the Fourteenth Amendment is not a font of tort law that can be used, through section 1983, to convert state tort claims into federal causes of action. To rise to the conscience-shocking level, conduct most likely must be intended to injure in some way unjustifiable by any government interest.

*Id*. (internal citations and quotation marks omitted); *see also Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1376 (11th Cir. 2002) (observing that courts must remain vigilant "to prevent the Fourteenth Amendment from becoming a surrogate for conventional tort principles").

In *Davis*, the Eleventh Circuit observed that, in the school setting, it had found conscious-shocking conduct viable as a substantive due process claim in only two

cases, both involving excessive corporal punishment. *See* 555 F.3d at 983 (citing *Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069 (11th Cir. 2000), and *Kirkland v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003)). It explained:

> In *Neal*, the court concluded a high school coach's conduct rose to the level of a constitutional violation. 229 F.3d at 1076. There, the coach intentionally struck a student with a metal weight lock, knocking the student's eye out of its socket, as a form of punishment for his involvement in a fight with another student. *Id.* at 1071. In finding a violation of the student's substantive due process rights, the court reasoned that the school official "intentionally us[ed] an obviously excessive amount of force that presented a reasonably foreseeable risk of serious bodily injury." *Id.* at 1076. Importantly, it made clear the claims of excessive corporal punishment shaped the outcome. *Id.* Similarly, in *Kirkland v. Greene County Board of Education*, 347 F.3d 903 (11th Cir. 2003), the court concluded a high school principal violated a student's constitutional rights after he struck the student with a metal cane in the head, ribs, and back for disciplinary reasons. *Id.* at 904–05.

*Id.* at 982.

Both *Neal* and *Kirkland* involved direct, intentional physical abuse by a teacher that resulted in immediate and severe physical injuries to a student. Here, the allegations do not involve a teacher's acts of physical abuse against a student. Rather, Plaintiff's allegations center on one brief exchange during which Caswell engaged in verbal harassment and Hodge declined to intervene. The absence of intentional physical abuse distinguishes this case from both *Neal* and *Kirkland*.

Moreover, while Caswell's and Hodge's conduct was wholly unprofessional given their roles as educators, the verbal harassment at issue does not rise to a

8

violation of Plaintiff's substantive due process rights. *See Abeyta v. Chama Indep. Sch. Dist.*, 77 F.3d 1253, 1258 (10th Cir. 1996) (holding that no substantive due process violation occurred when a teacher "called plaintiff a prostitute and apparently permitted her classmates to taunt her over a period of weeks"); *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (holding that no constitutional violation occurred when a teacher told students that "their handwriting 'suck[ed],' 'if you had one eye and half a brain, you could do this,'" and "call[ed] students 'stupid,' and refer[ed] to students as 'bimbos,' 'fatso,' and the 'welfare bunch'"); *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 919–921 (8th Cir. 2001) (holding that a teacher's verbal harassment of a student, which included calling the student "retarded," "stupid," and "dumb" in front of her classmates, was not "sufficiently shocking to the conscience to state a substantive due process claim").

Even if it is assumed, *arguendo*, that Caswell's and Hodge's conduct amounted to a constitutional violation, Plaintiff's substantive due process claim against the Board fails for another reason—Caswell's and Hodge's actions do not represent official government policy. A municipality, like the Board, "may not be held liable for constitutional deprivations on a theory of *respondeat superior*." *Hill v. Cundiff*, 797 F.3d 948, 977 (11th Cir. 2015) (citing *Denno v. Sch. Bd. of Volusia Cty., Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000)). Rather, "municipal liability is limited to action for which the municipality is actually responsible." *Id*. (citation

9

and quotations omitted). Hence, "[a] municipality . . . may be held liable 'only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" *Id*. (quoting *Denno*, 218 F.3d at 1276).

Here, the complaint is devoid of any allegations demonstrating that the Board had a custom or policy that resulted in a violation of Plaintiff's substantive due process rights. Thus, the Board may be held liable only if Caswell and Hodge—both teachers—are officials fairly deemed to represent government policy. Eleventh Circuit precedent makes clear that they are not. *See Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263–64 (11th Cir. 2010) (holding that the defendant school board could not be held liable under § 1983 for the actions of a principal and an executive director of the school board's special investigative unit because such individuals were "not 'officials fairly deemed to represent government policy'"). So, if neither a principal nor an executive director is an official fairly deemed to represent government policy, it follows *a fortiori* that the actions of a teacher cannot be attributed to the Board for the purposes of imposing municipal liability under § 1983.

In sum, Plaintiff's allegations do not establish that Caswell's and Hodge's conduct satisfies the strict standard of "arbitrary or conscience-shocking." Nor do

the allegations establish that Caswell and Hodge were officials fairly deemed to represent government policy. Accordingly, Plaintiff's substantive due process claim is due to be dismissed as a matter of law.

### B. **Plaintiff's Equal Protection Claim is Due to Be Dismissed on Shotgun Pleading Grounds.**

In Count 2 of his complaint, Plaintiff brings an equal protection claim against the Board, the Board Members, and Moore. Pursuant to Federal Rule of Civil Procedure 12(e), the Board and the Board Members move for a more definite statement concerning Count 2. Their argument is sound.

"Complaints that violate either [Federal Rule of Civil Procedure] . . . 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleading'" and have been uniformly rejected by the Eleventh Circuit. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (alteration added). Shotgun complaints violate Rule 8 "by fail[ing] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id*. at 1323 (alterations added). In some shotgun complaints, "each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id*. at 1321. In others, the complaint commits "the sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants

11

the claim is brought against." *Id*. at 1323.

In the instant case, Plaintiff's complaint is a shotgun pleading in both of the foregoing ways as it relates to the equal protection claim against the Board, the Board Members, and Moore.  First, the introduction to Count 1 "realleges all prior paragraphs of the Complaint as set out here in full." (Doc. # 1-1, at 9.)  Likewise, Count 2 "realleges all prior paragraphs of the Complaint," thus making it a combination of Count 1. (Doc. # 1-1, at 10.)  This combination deprives Defendants of adequate notice of the grounds upon which Plaintiff's claim rests because it makes it impossible to discern which factual allegations support Count 1—a substantive due process cause of action—and which factual allegations support Count 2—an equal protection cause of action.  It is also worth noting that Counts 3–5, state-law claims for outrage and negligent supervision also suffer from the same defect insofar as they incorporate "all prior paragraphs of the Complaint."  (Doc. # 1-1, at 10–13.)  Again, this leaves Defendants to speculate as to which allegations form the basis of Plaintiff's equal protection claim.

Second, Plaintiff brings his equal protection claim against eight Defendants. Nowhere in the Complaint, however, does Plaintiff attempt to draw distinctions between the conduct of the eight Defendants in relation to this claim.  Instead, Plaintiff lists each of the eight Defendants in the heading to Count 2 followed by the unhelpful phrase "Collectively referred to as Defendants."  (Doc. # 1-1, at 10.)

12

Plaintiff's failure to delineate which facts apply to which Defendant deprives the Board, the Board Members, and Moore of the adequate notice to which they are entitled.

But that's not all.  Count 2 uses conclusory and general language like "Defendants [sic] acts, omissions, and inactions thus directly and proximately caused a deprivation of Plaintiff's equal protection . . . in violation of the rights secured by the 14th Amendment."  (Doc. # 1-1, at 10.)  Apart from this vague language, Plaintiff fails to allege the essential elements and theory upon which his equal protection claim rests.  Moreover, Plaintiff fails to specify whether he brings Count 2 against Moore in her official or individual capacity.  For these illustrative reasons, Plaintiff's equal protection claim is due to be dismissed without prejudice.[5]

### C. **Plaintiff Fails to State a Claim for Outrage Against Hodge.**

Hodge moves to dismiss Plaintiff's state-law claim of outrage under Federal Rule of Civil Procedure 12(b)(6).  In support of his motion, Hodge argues that Plaintiff's "allegations cannot, as a matter of law, constitute the tort of outrage." (Doc. # 31, at 4.)  The court agrees.

Under Alabama law, "[f]or a plaintiff to recover under the tort of outrage, [he] must demonstrate that the defendant's conduct (1) was intentional and reckless; (2)

---

[5] The pleading deficiencies pointed out in this opinion are illustrative.  Plaintiff has the responsibility to plead his "claim[] discretely and succinctly." *Weiland*, 792 F.3d at 1320 (citation omitted).

13

was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, 266 So. 3d. 674, 676 (Ala. 2017) (citation omitted) (alterations added). As explained by the Alabama Supreme Court, "[t]he tort of outrage is an extremely limited cause of action" and "is viable only when conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little v. Robinson*, 72 So. 3d 1168, 1172–73 (Ala. 2011) (quotations and citations omitted). Importantly, the tort of outrage "does not recognize recovery for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. at 1172 (quotations and citations omitted).

Alabama courts have only recognized outage claims in a handful of extreme circumstances, illustrating its limited application. *See Whitt v. Hulsey*, 519 So. 2d 901, 906 (Ala. 1987) (holding that there was "evidence sufficient to support the claim of outrageous conduct, where the alleged act was the desecration and destruction of a portion of a family burial ground"); *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 141 (Ala. 1983) (holding that the conduct at issue, which included the use of death threats and mock executions, "was so horrible, so atrocious, so barbaric . . . that no civilized person could be expected to endure the acts committed without suffering mental distress"); *Busby v. Truswal Sys. Corp.*, 551 So.

14

2d 322, 324 (Ala. 1989) (holding that egregious and sustained sexual harassment constituted outrageous conduct).

Here, Plaintiff alleges in Count 4 that Hodge engaged in outrageous conduct when "he laughed at the actions of Defendant Caswell toward Plaintiff and he did not attempt to stop Defendant Caswell's actions against Plaintiff." (Doc. # 1-1, at 11.) That's it. This lone allegation clearly distinguishes this case from the extreme conduct complained of in *Whitt*, *Bowen*, and *Busby*. At most, Hodge's behavior amounts to an insult or indignity, and that is not enough to establish the tort of outrage under Alabama law. *See Little*, 72 So. 3d at 1172 (Ala. 2011). Because Hodge's actions fall far short of conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," Plaintiff's outrage claim against him is due to be dismissed with prejudice. *Id*. at 1173.

D. **Plaintiff's Negligent Supervision Claim Fails as a Matter of Law.**

In Count 5 of his Complaint, Plaintiff brings a negligent supervision claim under Alabama law against the Board, the Board Members, Moore, and fictitious Defendants A, B, and C. Plaintiff's negligent supervision claim fails for three reasons: (1) the Board and Moore, in her official capacity, are entitled to state sovereign immunity against this claim; (2) "Alabama law does not recognize a cause of action against a supervisor for that supervisor's negligent . . . supervision of a

15

subordinate," *Hand v. Univ. of Ala. Bd. of Trustees*, 304 F. Supp. 3d 1173, 1182 (N.D. Ala. 2018); and (3) fictitious-party pleading is generally not allowed in federal court.

Beginning with state sovereign immunity, both the Board and Moore correctly contend that the doctrine of state absolute immunity provides them protection from Plaintiff's negligent supervision claim. Article I, § 14 of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." This constitutional provision creates a "nearly impregnable and almost invincible wall that provides the State an unwaivable, absolute immunity from suit . . . in any court." *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006) (citations and quotations omitted). Section 14 "affords the State and its agencies an 'absolute' immunity from suit in any court." *Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004) (citation omitted). And, "[i]t is well settled in Alabama that '[l]ocal school boards are agencies of the State, not the local governments that they serve, and they are entitled to the same absolute immunity as other agencies of the State.'" *Ex parte Montgomery Cnty. Bd. of Educ.*, 88 So. 3d 837, 841 (Ala. 2012) (quoting *Ex parte Bessemer Bd. of Educ.*, 68 So. 3d 782, 789 (Ala. 2011)). Based on the foregoing authority, Plaintiff's negligent supervision claim against the Board is due to be dismissed with prejudice. Moreover, Moore is entitled to § 14 immunity to the extent that Plaintiff brings his negligent supervision

claim against her in her official capacity. *See Ex parte Dangerfield*, 49 So. 3d 675, 681 (Ala. 2010) (explaining that "[i]t is settled beyond cavil that State officials cannot be sued for damages in their official capacities").

The portion of Count 5 directed at the Board Members and Moore in their individual capacities fares no better. As another court from this district astutely noted:

> Whether a plaintiff may bring a claim against an employee for negligent supervision and training of a subordinate is not a novel question raised for the first time . . . Rather, it is a question that has been frequently and unanimously answered by federal courts in Alabama with a resounding "no."

*Ghioroaie-Panait v. Rolle*, No. 3:17-cv-698-ALB-WC, 2020 WL 130892, at *5 (M.D. Ala. Jan. 10, 2020) (collecting cases). And this makes sense because the "cause of action for negligent supervision is premised upon the fact that the master in a master-servant relationship may be 'held responsible for his servant's incompetency.'" *Weissenbach v. Tuscaloosa Cnty. Sch. Sys.*, No. 7:17-cv-001642-LSC, 2018 WL 5848047, at *7 (N.D. Ala. Nov. 8, 2018) (quoting *Lane v. Central Bank of Ala., N.A.*, 425 So. 1098, 1100 (Ala. 1983)). Here, the complaint contains no allegations suggesting that either the Board Members or Moore are in a master-servant relationship with teachers at Plaintiff's school. Accordingly, Plaintiff has not demonstrated that Alabama law recognizes his cause of action for negligent supervision against the Board Members and Moore, and the weight of authority does

not support his claim. *See*, *e.g.*, *Hand*, 304 F. Supp. at 1182; *Doe v. City of Demopolis,* 799 F. Supp. 2d 1300, 1311 (S.D. Ala. 2011) (finding that "Alabama law does not recognize a cause of action against a supervisor or municipality for negligent supervision/training"); *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) (same).

Finally, Plaintiff's negligent supervision claim against fictitious Defendants A, B, and C fails because "[a]s a general matter fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). True, the Eleventh Circuit has "created a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be at the very worst surplusage." *Id*. (quotations and citation omitted). However, Plaintiff's description of fictitious Defendants A, B, and C[6] lacks the necessary specificity to qualify under this limited exception. Accordingly, Plaintiff's negligent supervision claim against these fictitious Defendants is due to be dismissed.

---

[6] Plaintiff's complaint describes fictitious Defendant A as "the person or persons responsible for evaluating and/or assessing" Caswell and Hodge, fictitious Defendant B as "the persons or persons responsible for supervising" Caswell and Hodge, and fictitious Defendant C as "the persons or persons, entity or entities, other than those persons or entities described above, whose negligence, wantonness or other conduct contributed to causing the occurrence made the basis of this lawsuit." (Doc. # 1-1, at 4–5.)

## V. CONCLUSION

Accordingly, it is ORDERED:

1. The Board's and the Board Members' motion to dismiss or, in the alternative, motion for a more definite statement (Doc. # 12) is GRANTED as follows:

    a. Count 1, a substantive due process claim against the Board, is DISMISSED with prejudice.

    b. Count 2, an equal protection claim against the Board, the Board Members, and Moore, is dismissed without prejudice. As to this claim, Plaintiff is granted leave to file an amended complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2), that complies with the pleading requirements of the Federal Rules of Civil Procedure and the following requirements of this order. The amended complaint must set forth, in separately numbered paragraphs, allegations of fact that are simple, concise, direct, sufficiently detailed, and material to Plaintiff's equal protection claim against the Board, the Board Members, and Moore. Plaintiff may not simply incorporate all factual allegations by reference into every count; rather, Plaintiff must indicate with clarity which specific factual allegations are material to the equal protection claim.

2. Moore's motion to dismiss (Doc. # 11) is GRANTED as it relates to Plaintiff's negligent supervision claim (Count 5), and this claim against Moore is DISMISSED with prejudice. Moore's motion to dismiss (Doc. # 11), as it relates to Plaintiff's

equal protection claim (Count 2), is DENIED without prejudice to reassert any arguments that may be relevant to the amended complaint.

3. Hodge's motion to dismiss (Doc. # 31) is GRANTED as it relates to Plaintiff's outrage claim (Count 4), and this claim against Hodge is DISMISSED with prejudice.

4. The negligent supervision claim against fictitious Defendants A, B, and C is DISMISSED with prejudice.

5. Plaintiff shall show cause, **on or before March 5, 2021**, why his action against Mr. Abrams should not be dismissed without prejudice pursuant to Rule 4(m).

Plaintiff is ADVISED that, if he does not file an amended complaint **on or before March 5, 2021**, this action will be dismissed without prejudice. Claims and demands for relief that fail to comply with the Federal Rules of Civil Procedure and the requirements of this Order may be subject to dismissal without further opportunities for amendment.

DONE this 23rd day of February, 2021.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE