IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| J.D.P., by and through his next friend, | ) | |
| Lashun Oliver, guardian, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:20-CV-420-WKW |
| | ) | [WO] |
| MONTGOMERY COUNTY | ) | |
| BOARD OF EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are two motions: (1) a joint motion to dismiss filed by all Defendants other than Defendant Kreshay Monique Thomas Caswell, (Doc. # 47), and (2) a motion for judgment on the pleadings filed by Defendant Caswell, (Doc. # 56). Defendants argue that Plaintiff's amended complaint (Doc. # 44) has failed to state a claim under either Rule 12(b)(6) or Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons stated below, both motions are due to be granted.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction over the federal-law claims is proper pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights jurisdiction), 1441 and 1446(b)(3) (removal jurisdiction), and over the state-law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Personal jurisdiction and venue are not contested.

## II.  STANDARDS OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff.  *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556). The well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true.  *Id.*

A Rule 12(c) motion for judgment on the pleadings is reviewed using similar standards.  "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts."  *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  At the Rule 12(c) stage, the court still "accept[s] the facts in the complaint as true and . . . view[s] them in the light most favorable to the nonmoving party."  *Id.*

### III.  BACKGROUND

The amended complaint contains the following factual allegations.  On May 23, 2018, Plaintiff, a seventeen-year-old male student at Jefferson Davis High School, was receiving individual instruction from his teacher, former-Defendant David Hodge, in a classroom.  Defendant Caswell, also a teacher at the school, was present.  However, only Hodge was in the room for the purpose of teaching Plaintiff; Caswell's reasons for being in the room remain unclear.  At some point during the lesson, Caswell began to harass Plaintiff, including using a racial slur presumably directed at Plaintiff.  Specifically, Caswell said, "Get that lesson.  You the only one. Get that lesson.  That's what happens when [n-word] be thinking you be playing. See this teacher's good.  Y'all know me, I'm petty.  Hell no, he would be getting' [sic] this at summer school.  Twenty days, four weeks."  (Doc. # 44, at 5–6 (first alteration in original).)  Caswell then bullied Plaintiff:  "Aw, don't be ashamed now. Because you weren't ashamed during the school year.  We need to put this on your Snap[chat] so all your friends can see."  (Doc. # 44, at 6 (alteration in original).) While Caswell criticized Plaintiff, Hodge laughed and made no attempt to intervene. Caswell posted a video recording of this entire exchange to her social media account.

Following the classroom incident, Plaintiff reported what happened to the Defendant School Board and its members.  According to Plaintiff, these Defendants failed to provide him with any relief or counseling.  Plaintiff also alleges that

"Caswell's prior history of aggression and inappropriate behavior toward students was known," yet no action was taken to remedy her conduct or remove her from her teaching position.  (Doc. # 44, at 6.)

Based on these allegations, Plaintiff brought five causes of action in his original complaint:  (1) violation of his due process rights under the Fourteenth Amendment against the Board; (2) violation of his equal protection rights under the Fourteenth Amendment against the board, the board members (all in their individual capacities), and the superintendent; (3) a state law claim for outrage against Caswell; (4) another state-law claim for outrage against Hodge; and (5) a state-law claim for negligent supervision against the board, the board members, the superintendent, and fictitious Defendants A, B, and C.  (Doc. # 1-1.)

On February 23, 2021, this court issued a memorandum opinion and order (Doc. # 40), which dismissed several of Plaintiff's claims, but granted leave to amend on some claims.  Count I, the claim for violation of due process rights, was dismissed with prejudice because the harassment endured by Plaintiff did not rise to the level of serious corporal punishment that the Eleventh Circuit has required for due process claims such as Plaintiff's.  *See Kirkland ex rel. Jones v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 905 (11th Cir. 2003); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000).  Count II, the claim for violation of equal protection rights, failed to state a claim because it did not specifically

4

delineate the conduct attributable to each Defendant and failed to specifically allege the essential elements and theory of equal protection upon which Plaintiff's claim rested.   However, leave was granted to amend Count II to afford Plaintiff an opportunity to rectify these problems.

Count III, the claim of outrage against Defendant Caswell, was not addressed in the previous order because Defendant Caswell answered and did not move to dismiss the original complaint.  (Doc. # 27.)  Count IV, the claim of outrage against Hodge, was dismissed with prejudice because it failed to allege the level of extreme and outrageous conduct required by Alabama law for a successful outrage claim.

Count V, the negligent supervision claim against the school board, the board members, the superintendent, the principal, and fictitious defendants A, B, and C,[1] was dismissed with prejudice because (1) the board, superintendent, and principal were entitled to sovereign immunity, (2) Alabama law does not recognize a cause of action against a supervisor for negligent supervision, and (3) fictitious-party pleading is generally not allowed in federal court.

Plaintiff's amended complaint (Doc. # 44) reasserts the two remaining claims: Count I is a claim under the Equal Protection Clause of the Fourteenth Amendment

---

[1] Plaintiff's original complaint described fictitious Defendant A as "the person or persons responsible for evaluating and/or assessing" Caswell and Hodge, fictitious Defendant B as "the persons or persons responsible for supervising" Caswell and Hodge, and fictitious Defendant C as "the persons or persons, entity or entities, other than those persons or entities described above, whose negligence, wantonness or other conduct contributed to causing the occurrence made the basis of this lawsuit." (Doc. # 1-1, at 4–5.)

against the school board, the members of the school board, the superintendent of the school district, and the principal of the high school.  Count II is a claim under state law for outrage against Defendant Caswell.  The first group of defendants has moved to dismiss the claims against them.  (Doc. # 47.)  Caswell has answered the amended complaint, (Doc. # 50), and moved for judgment on the pleadings for the claim against her.  (Doc. # 56.)

## IV.  DISCUSSION

### A.  Equal Protection Claims Against the School Board, Its Members and Superintendent, and the Principal of the High School

The supervisory Defendants move to dismiss the equal protection claim against them.  They primarily argue that Plaintiff has persisted in his failure to state a viable claim under the Fourteenth Amendment's Equal Protection Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 215 (1982) (plurality)).  "Equal protection jurisprudence is typically concerned with governmental classification and treatment that affects some discrete and identifiable group of citizens differently from other groups." *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1296 (11th Cir. 2012).  Thus, an equal protection plaintiff must show that the state

6

treated him differently than other similarly situated persons based on his or her membership in an identifiable group or class of persons.  Also, "'[p]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim,' and the Supreme Court has said that the idea of intention or purpose means that 'the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'"  *Id.* at 1297 (quoting *Parks v. City of Warner Robins*, 43 F.3d 609, 616 (11th Cir.1995), and *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)) (omission in original).

"Equal protection claims can be divided into three broad categories." *E & T Realty v. Strickland*, 830 F.2d 1107, 1112 n.5 (11th Cir. 1987).  "The first and most common type is a claim that a statute discriminates on its face.  In such a case, a plaintiff can prevail by showing that there is no rational relationship between the statutory classification and a legitimate state goal." *Id.* (citing *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612, 618 (1985), and *Dandridge v. Williams*, 397 U.S. 471, 485–86 (1970)).  But if "the statute facially discriminates against certain groups or trenches upon certain fundamental interests, courts have required a closer connection between the statutory classification and the state purpose" by applying intermediate or strict scrutiny.  *Id.* (citing *Plyler*, 457 U.S. at 216–18 & nn. 14–16).

"The second type of equal protection claim is that neutral application of a facially neutral statute has a disparate impact.  In such a case, a plaintiff must prove purposeful discrimination."  *Id.* (citing *Feeney*, 442 U.S. 265, and *Washington v. Davis*, 426 U.S. 229 (1976)).  "The third type of claim is that defendants are unequally administering a facially neutral statute."  *Id.*  Such claims must also prove "intentional or purposeful discrimination."  *Id.* at 1113 (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944)).

It is possible to allege governmental discrimination against a class of persons consisting only of the plaintiff.  For these claims, called "class of one" claims, the plaintiff must also "allege[] that []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  To be similarly situated, the comparator and plaintiff must be "*prima facie* identical in all relevant respects."  *Id.* at 1204 (quoting *Campbell v. Rainbow City*, 434 F.3d 1306, 1314 (11th Cir. 2006)).

Plaintiff's complaint fails to properly state any version of an equal protection claim.  Plaintiff does not identify a statute that is discriminatory on its face, he does not identify a statute that has had a disparate impact, and he does not allege the

discriminatory intent needed to satisfy the second or third category of equal protection claims.

The Equal Protection Clause, at its heart, protects individuals against discrimination by the government.  Plaintiff, despite being granted an opportunity to amend and refine his claim, still does not allege that he was treated any differently than anyone else, much less allege the necessary facts to support a plausible showing of discriminatory intent or a plausible showing of a valid comparator.

Plaintiff's closest allegation to an equal protection claim is in Caswell's use of a racial epithet, which could imply that Caswell was acting on the basis of Plaintiff's race.  However, Plaintiff did not specifically allege or argue that Caswell's behavior was discrimination or harassment *on the basis of race*.  Even if he intended to, his allegations fall short:  The use of a racial epithet alone is not an equal protection violation, *see Priester v. Lowndes Cnty.*, 354 F.3d 414, 424 (5th Cir. 2004), so more factual material and argument would be needed to show how the harassment was motivated by race.  Plaintiff did not provide any such factual material or argument.  But most critically, liability for the supervisory defendants must rest on their own actions—meaning that the supervisory defendants must have personally participated in the harassment or developed a policy or custom encouraging, promoting, or permitting this kind of race-based harassment.  Plaintiff's complaint does not contain any factual matter plausibly indicating "the

existence of a widespread 'custom' of mistreatment similar to that which he experienced." *Arrington v. Miami Dade Cnty. Pub. Sch. Dist.*, 835 F. App'x 418, 422 (11th Cir. 2020). Accordingly, even if the use of the racial epithet implied that Plaintiff was harassed on the basis of his race, the complaint still fails to state a claim under the Equal Protection Clause.

Despite the fact that Plaintiff's due process claim was dismissed by previous order and he was granted leave to amend only the equal protection claim, Plaintiff's defense of his complaint ignores the equal protection standard entirely. He quotes only the Due Process Clause of the Fourteenth Amendment and cites only cases discussing the due process standard. (Doc. # 51 at 4–7.) Other than one sentence in the opening paragraphs of his brief, Plaintiff does not mention "equal protection" whatsoever. The serious gaps identified in this court's previous order have gone unfilled, and Plaintiff persists in his failure to state a claim under the Equal Protection Clause of the Fourteenth Amendment. Accordingly, the claim is due to be dismissed with prejudice.

**B.    Outrage Claim Against Defendant Caswell**

The outrage claim against Defendant Caswell, which was not addressed in the previous order, is due to be dismissed for the same reasons that the outrage claim against Hodge was dismissed.

Under Alabama law, "[f]or a plaintiff to recover under the tort of outrage, [he] must demonstrate that the defendant's conduct (1) was intentional and reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Wilson v. Univ. of Ala. Health Servs. Found., P.C.*, 266 So. 3d 674, 676 (Ala. 2017) (citation omitted) (alterations added). As explained by the Alabama Supreme Court, "[t]he tort of outrage is an extremely limited cause of action" and "is viable only when conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Little v. Robinson*, 72 So. 3d 1168, 1172–73 (Ala. 2011) (quotations and citations omitted). Importantly, the tort of outrage "does not recognize recovery for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* at 1172 (quotations and citations omitted).

Alabama courts have recognized outrage claims in only a handful of extreme circumstances. *See Whitt v. Hulsey*, 519 So. 2d 901, 906 (Ala. 1987) (holding that there was "evidence sufficient to support the claim of outrageous conduct, where the alleged act was the desecration and destruction of a portion of a family burial ground"); *Nat'l Sec. Fire & Cas. Co. v. Bowen*, 447 So. 2d 133, 141 (Ala. 1983) (holding that the conduct at issue, which included the use of death threats and mock executions, "was so horrible, so atrocious, so barbaric . . . that no civilized person

11

could be expected to endure the acts committed without suffering mental distress");
*Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989) (holding that egregious
and sustained sexual harassment constituted outrageous conduct).   These three
situations, "(1) wrongful conduct in the family-burial context, (2) barbaric methods
employed to coerce an insurance settlement, and (3) egregious sexual harassment,"
are the only three where the Alabama Supreme Court has historically recognized the
limited tort.   *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (citations omitted).
Nothing about Alabama law prevents the application of the tort to new scenarios,
*see Wilson v. Univ. of Alabama Health Servs. Found., P.C.*, 266 So. 3d 674, 677
(Ala. 2017), but the low number and extreme nature of the historic applications of
the tort illustrate a high bar for plaintiffs.

When a federal court must apply the law of one of the several states, it is
"bound to decide the case the way it appears the state's highest court would." *Risley
v. Nissan Motor Corp. USA*, 254 F.3d 1296, 1299 (11th Cir. 2001).   When the
Alabama Supreme Court has given such a limited interpretation to the tort of outrage,
this court is bound to conclude that Defendant Caswell's actions did not rise to the
level of "extreme and outrageous" conduct.   Caswell's alleged actions are not in any
way comparable to the three illustrative areas in which the tort of outrage has been
recognized in Alabama.

What Caswell did was distasteful, disrespectful, and unprofessional. Caswell's actions were certainly more egregious than Hodge's actions discussed in the previous order.  However, her actions were not tortious—at least not under the limited Alabama tort of outrage.  Accordingly, the claim against Caswell must be dismissed with prejudice.

## V.  CONCLUSION

For the reasons stated above, it is ORDERED that the motion to dismiss (Doc. # 47) and the motion for judgment on the pleadings (Doc. # 56) are GRANTED and this case is DISMISSED with prejudice.

A final judgment will be entered separately.

DONE this 31st day of January, 2022.

_____ /s/ W. Keith Watkins _____
UNITED STATES DISTRICT JUDGE